# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

ST. PAUL FIRE AND MARINE          )
INSURANCE COMPANY,                )
                                  )
        Plaintiff,                )
                                  )
        v.                        )   No. 06 C 2571
                                  )
FRANKLIN BANK, S.S.B. and         )
G.M. SIGN, INC.,                  )
                                  )
        Defendants.               )

## MEMORANDUM OPINION

Before the court is the motion of defendant Franklin Bank, S.S.B. ("Franklin Bank") to transfer pursuant to 28 U.S.C. § 1404(a). For the following reasons, the motion is granted.

## BACKGROUND

Plaintiff, St. Paul Fire and Marine Insurance Company ("St. Paul"), brings this action for declaratory relief against defendants Franklin Bank, S.S.B. ("Franklin Bank") and G.M. Sign, Inc. ("GM Sign"), concerning St. Paul's obligations under a series of insurance policies between St. Paul and Franklin Bank.

In November 2005, GM Sign brought a nationwide class action against Franklin Bank in Illinois state court for violations of the federal Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "GM Sign Action"). The GM Sign Action was removed to this court in February 2006 and is pending before Judge Kocoras. The only

remaining claim pending against Franklin Bank is for sending an unsolicited advertisement to GM Sign's facsimile ("fax") machine and the fax machines of putative class members in violation of 47 U.S.C. § 227(b). GM Sign alleges that the unsolicited faxes caused it to lose paper and toner as well as employee time and prevented it from using its fax machines for business purposes at the time it was receiving Franklin Bank's faxes.

At the time relevant to the complaint, plaintiff St. Paul, a Minnesota corporation with its principal place of business in Minnesota, provided commercial general liability protection to Franklin Bank. Franklin Bank tendered the GM Sign Action to St. Paul for defense. St. Paul denied coverage and then filed the instant action, seeking a declaration that it owes no duty to defend or indemnify Franklin Bank in the GM Sign Action.

Franklin Bank now moves to transfer venue from this district to the Southern District of Texas. In Franklin Bank's view, although venue is proper in this district, it is more convenient to litigate in the Southern District of Texas. GM Sign moves to join in Franklin Bank's motion; that motion is granted.

## DISCUSSION

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "In other words, transfer is appropriate where:

(1) venue is proper in both the transferor and transferee court; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interest of justice." Abbott Labs. v. Selfcare, Inc., No. 98 C 7102, 1999 WL 162805, at *1 (N.D. Ill. Mar. 15, 1999) (Grady, J.) (internal quotation marks omitted). The moving party has the burden of showing that the transferee court is more convenient. Heller Fin., Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1293 (7th Cir. 1989).

   1.  **Proper Venue**

When jurisdiction is based on diversity, as it is in this case, a suit may brought in "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." 28 U.S.C. 1391(a). A corporate defendant is deemed to "reside" wherever it is subject to personal jurisdiction at the time the suit is brought. 28 U.S.C. § 1391(c).

Franklin Bank argues that it is chartered by and headquartered in Texas, therefore subject to personal jurisdiction and "residing" there. In addition, it contends that a substantial part of the

events giving rise to St. Paul's claim occurred there because the insurance policies were solicited, negotiated, delivered, and executed in Texas.

St. Paul does not dispute that venue would be proper in Texas if the sole defendant were Franklin Bank. But it contends that GM Sign, as the allegedly injured party in the underlying action, is a necessary party to this action and that venue would be improper in Texas because "[t]here is no indication that the Southern District of Texas can obtain jurisdiction over G.M. Sign." (Memorandum in Opposition to Motion at 5.) GM Sign, however, joins in Franklin Bank's motion to transfer and states that it waives any objections to personal jurisdiction or venue in the Southern District of Texas.[1] Thus, it appears that venue would be proper in the Southern District of Texas.

## 2. Convenience

We move on to questions of convenience, where we consider (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to evidence; (4) the convenience of the witnesses; and (5) the convenience of the parties. See Abbott Labs., 1999 WL 162805, at *3.

---

[1] Because GM Sign indicates that it waives any objections to personal jurisdiction or venue in the Southern District of Texas, we need not consider Franklin Bank's argument that we should sever St. Paul's claims against GM Sign in order to effectuate a transfer of venue.

St. Paul maintains that even though it is a Minnesota corporation with its principal place of business in Minnesota, its choice of forum in this district should be given substantial weight. St. Paul states that "[i]t is admittedly true that, when the plaintiff does not reside in the chosen forum and the conduct and events giving rise to the cause of action did not take place in the selected forum, the plaintiff's preference has nominal value," but argues that "at least *some* of the conduct and events giving rise to this dispute took place in Illinois." (Memorandum in Opposition to Motion at 6.) We disagree. Some of the events giving rise to the GM Sign Action may have taken place in Illinois, but not those of the instant dispute regarding insurance coverage, see <u>infra</u>. Because Illinois is not St. Paul's home forum and because the cause of action did not arise in Illinois, St. Paul's choice of forum is not entitled to deference. <u>See</u> <u>St. Paul Fire & Marine Ins. Co. v. Brother Int'l Corp.</u>, No. 05 C 5484, 2006 WL 1543275, at *2 (N.D. Ill. June 1, 2006).

The second factor is the situs of material events. Franklin Bank points out that Texas is the state (1) where the commercial general liability policies at issue were solicited, negotiated, delivered, and executed; (2) from where the insurance premiums were paid; and (3) from where the coverage claims were submitted. St. Paul focuses on the events of the GM Sign Action--the sending of faxes to GM Sign's office in Illinois. The events material to this

case, however, are the decisions made in relation to (including the interpretation of) the insurance policies between St. Paul and Franklin Bank, none of which occurred in Illinois. Because some of the material events of this case occurred in Texas and none occurred in Illinois, this factor favors transfer to Texas.

We will consider the next two factors--the convenience of witnesses and the ease of access to evidence--together. The convenience of witnesses is often viewed as having the most weight when considering transfer. Brother Int'l, 2006 WL 1543275, at *4. Franklin Bank identifies four witnesses, representatives or former representatives of various independent insurance brokers ,who will testify about the negotiations of the policies and the parties' intent. These four witnesses work and/or reside in Texas. Although it acknowledges that convenience to employee witnesses is not given great weight, Franklin Bank also names two employees who live in Texas who will testify about Franklin Bank's intent and expectations in entering into policies and its claims and communications history with St. Paul. In addition, Franklin Bank maintains its insurance files and correspondence at its Houston, Texas headquarters, and no documentary evidence exists in Illinois.

St. Paul responds that the insurance brokers' testimony may be unnecessary if the policies are determined to be unambiguous and that in any event, those witnesses can be expected to cooperate by traveling to Illinois because they have a "business relationship"

with Franklin Bank. St. Paul also argues that GM Sign (not anyone in particular from GM Sign), a non-party witness located in Illinois, "could provide testimony that would bear on the issues before the court (i.e., did they sustain 'property damage' as defined by the St. Paul policy)." (Memorandum in Opposition to Motion at 8.) St. Paul does not dispute the assertion that no documents are located in Illinois, but discounts that factor as relatively unimportant due to the ease of electronic document sharing.

It does not appear to us that testimony from GM Sign would be required on the legal question of contract interpretation. But testimony from the independent insurance brokers and from Franklin Bank's employees, all of whom are located in Texas, may be required. Furthermore, although technology has made it easier and faster to send documents across the country, it is nonetheless more efficient to litigate where the bulk of relevant documents are located. The "convenience of witnesses" and "ease of access to evidence" factors weigh heavily in favor transfer to Texas.

The final convenience consideration is that of the parties. Texas is clearly more convenient to Franklin Bank, which is headquartered there. St. Paul argues that its employee witnesses are located in Minnesota and that Chicago is more convenient than Texas in terms of both distance and airfare expense. We agree with Franklin Bank, though, that St. Paul has already willingly accepted

inconvenience by filing suit outside of its home forum.  The inconvenience to St. Paul of litigating in Texas is only marginally greater than that of litigating in Illinois; on the other hand, the inconvenience to Franklin Bank of litigating in Illinois is significantly greater than that of litigating in Texas.  Accordingly, the "convenience to the parties" factor favors transfer to Texas.

### 3. **Interest of Justice**

When evaluating the interest of justice (often referred to as the "public interest"), the court focuses on the efficient administration of the court system and considers factors such as the court's familiarity with the applicable law, the speed with which the case will proceed to trial, and the desirability of resolving controversies in their locale.  See Brother Int'l, 2006 WL 1543275, at *1.

"When a case is transferred from one federal district court to another pursuant to 28 U.S.C. § 1404, the choice-of-law principles of the state in which the original district court sits . . . govern the case."  Nelson v. Sandoz Pharm. Corp., 288 F.3d 954, 963 n.7 (7th Cir. 2002).  Franklin Bank maintains that under Illinois choice-of-law principles, the applicable substantive law is that of Texas and that it is preferable to have a federal judge familiar with Texas law preside over this case.  St. Paul agrees that Texas law applies, but notes that federal judges are often asked to apply

the law of a different state. That is true, but it is also true that a federal judge sitting in Texas is more familiar with Texas law than is a federal judge sitting in Illinois. This factor weighs (albeit slightly) in favor of transfer to Texas.

Regarding the speed with which the case will proceed to trial, the parties agree that according to statistics compiled by the Administrative Office of the United States Courts, this case would proceed to trial more quickly in the Southern District of Texas than in the Northern District of Illinois (15.3 months versus 27.0 months). The same statistics, however, reveal that cases proceed to *disposition* roughly three months earlier in the Northern District of Illinois than in the Southern District of Texas (6.9 months versus 9.8 months); this statistic is more helpful because the vast majority of civil cases are resolved short of trial. Franklin Bank points out that the median disposition time in the Northern District of Illinois historically has been somewhat skewed by the large number of mortgage foreclosure cases filed here, which are typically resolved very quickly. Allowing some leeway for this influence, then, it appears to us that the filing-to-disposition times in the two districts are very similar. We consider this factor to be a wash.

With respect to the desirability of resolving controversies in their locale, we believe that Texas has a stronger interest than does Illinois in deciding an insurance coverage dispute involving

a Texas insured (where the insurer's home forum is neither state). The case cited by St. Paul is inapposite because the underlying case there involved a contaminated property that had continuing effects in the forum state, whereas here there is no comparable concern about continuing effects from a fax sent into Illinois.

Because nearly all of the relevant factors weigh in favor of transfer to Texas, Franklin Bank's motion will be granted.

### **CONCLUSION**

For the foregoing reasons, GM Sign's motion to join in defendant Franklin Bank's motion to transfer is granted, and defendant Franklin Bank's motion to transfer this action is granted.  We hereby direct the Clerk of Court to transfer this case forthwith to the United States District Court for the Southern District of Texas.

DATE:     November 3, 2006

ENTER:    _____
          John F. Grady, United States District Judge